[Civ. No. 8910.   Third Dist.   Feb. 21, 1957.]

P. L. HARRISON, Respondent, v. JAMES W. FRYE et al., Defendants; HARRY SOOGIAN et al., Appellants.

J. Wilmer Jensen and Gerald V. Underwood for Appellants.

Cardozo, Trimbur & Nickerson and John M. Trimbur for Respondent.

WARNE, J. pro tem.*—This is an action by respondent Harrison against appellants for an injunction to prevent the erection of residences and requiring the removal of such buildings partially erected which allegedly violate a recorded "Declarations of Restrictions" imposed upon the lots herein involved by the original grantor who is the respondent. The restrictions call for the erection of first class buildings only.

On January 30, 1938, respondent and his wife executed the restrictions on a parcel of property described as the Harrison Subdivision, and it was admitted by appellants that these restrictions were recorded and applied to the lots owned by the appellants.

On March 22, 1954, appellants obtained a building permit for the erection of the buildings in question. The materials proposed to be used were previously used materials purchased from buildings erected in Richmond near the Richmond shipyards and were 10 years old. The materials were described by some of the witnesses as being old and deteriorated and some of the fixtures as being 30 or 40 years old.

The appellants purchased the lots and commenced construction before title was formally delivered to them. They had no actual knowledge of the restrictions until the present action was brought; however, they did admittedly have constructive notice of these restrictions by reason of the recording.

Upon trial, respondent moved for leave to dismiss as to Frye, George Alexander and Louise Alexander. The motion was granted. The court rendered judgment against appellants enjoining them from all further proceedings in the construction of the buildings, requiring them to remove the buildings then under construction and awarding costs to respondent. Appellants' motion for a new trial was denied. They appeal from the judgment.

The first contention made by the appellants is that the

*Assigned by Chairman of Judicial Council.

term "first class residence building" is so vague, ambiguous and uncertain that a building restriction requiring the erection of such buildings cannot be enforced. Appellants argue that building restrictions, by reason of their operation upon real property, are strictly construed since there are public policies in favor of the free use of land and the free alienation of land, and such restrictions must be clear, certain and unambiguous before they will or can be enforced.

"Words should be understood in their ordinary and popular sense rather than according to their strict legal meaning. This ordinary and popular sense is to be related to the circumstances under which the words are used, having in mind the purpose of the contract and the general situation which brought it into existence." (12 Cal.Jur.2d 353-354.)

"In the absence of technical words or phrases whose meanings are obscure, the office of interpretation belongs to the court. If the contract explains the meaning of the words, there is no need to go outside the contract. If, however, because of the use of technical or trade terms, the language is not plain, the testimony of those skilled in the art or experts in the field is admissible as to the meaning of the language. Where the words are not used in any special or local sense, their meaning is not a matter to be established by expert testimony, and they are to be given their ordinary meaning." (12 Cal.Jur.2d 356-357.)

It does not appear, nor is there any contention made by either side, that the term, "first class residence buildings" has a technical or peculiar meaning; therefore, the term is to be interpreted in its ordinary sense.

■ Ordinarily, the words "first class" are synonymous with, and include "good quality" and "good condition" and negative "inferior quality," "off grade," "bad condition," "injurious" and "unsafe." (Roget's Thesaurus, pars. 648 and 649; *Pacific Feed Co.* v. *Kennel,* 63 Cal.App. 108 [218 P. 274].) ■ Applying this definition to the restriction in question, there is nothing vague, ambiguous or uncertain as to its meaning or as to what was intended by the words "first class residence buildings."

There is substantial evidence in the record to sustain the trial court's finding that the restriction in question was being violated by the appellants. Further, by stipulation of the parties, the court viewed the premises. ■ His observation on viewing the premises became evidence in the case, and what he then saw may be used alone or with other evidence to

support the findings. (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 366 [203 P.2d 37], and cases cited therein; *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 889 [264 P.2d 932].)

Appellants cite *Threedy* v. *Brennan,* 131 F.2d 488, and *Cleveland* v. *Martin,* 218 Ill. 73 [75 N.E. 772, 3 L.R.A.N.S. 629] to support their contention that the term, "first class residence building" is vague, ambiguous and uncertain. We have considered each of the cases and find nothing in either that may be said to be controlling in the case at bar.

The appellants contend next that the court committed error in preventing appellants from introducing evidence to prove the respondent's waiver and abandonment of the Declarations of Restrictions and the estoppel of respondent to enforce the restrictions. In summary, the appellants offered to prove: (1) Material violations of the restrictions by other owners of lots in the Harrison Subdivision. (2) Respondent's knowledge of these violations for 3 to 8 years. (3) Respondent's failure to enforce restrictions after knowledge of the abovementioned violations. (4) Material violations by respondent himself. (5) Respondent's statements to lot-owners in the subdivision that there were no restrictions; that they were no longer effective. (6) There were so many material violations of the restrictions as to amount to a general disregard and abandonment of the restrictions. (7) The appellants carefully examined the subdivision before commencing construction and determined that their homes were as good or better than those homes immediately surrounding them. They relied on this examination. (8) The appellants noted the size of the homes, the use of used materials, the fact that one home within 200 feet of them had no foundation and various other violations before commencing construction, though they did not know. at the time that there were any restrictions. They relied on these observations. (9) The appellants had no actual knowledge of restrictions until served with respondent's complaint.

In their answer to plaintiff's complaint, the appellants alleged, as a separate defense, what they offered to prove. The law applicable to this question is found in American Law of Property, volume II, pages 440-442 and 444, wherein it is stated:

". . . [T]here may exist personal equities between the parties to the suit which will justify the denial of injunctive relief . . .

"The equitable defense of clean hands is involved in those

cases where the complainant is himself guilty of similar violations of corresponding restrictions. Where the complainant has himself violated an equitable servitude against his own lot, he is debarred from seeking equitable relief against his neighbors for similar violations on their part. This defense has been allowed even in cases where the complainant's breach, although substantial, has been of a lesser degree than that of the defendant. But where the violation by the complainant has been clearly of a trivial and immaterial character, the defense is denied as respects a substantial violation by the defendant which defeats the primary purpose of the restriction. Likewise, a breach by the complainant of a different restriction will not be a bar to equitable relief where the restrictions are essentially different, and the performance of each bears little relation to the other . . .

"The equitable defense of acquiescence arises where the complainant has acquiesced in the violation of the same type of restriction by third parties. Where the complainant has failed to enforce a similar equitable servitude against third parties, he has debarred himself from obtaining equitable relief against the defendant for subsequent violations of the same character. The reason for allowing this defense of acquiescence is the belief that the complainant, by his conduct in failing to seek enforcement against similar violations by third parties, has induced the defendant to assume that the restrictions are no longer in effect. . . ." (Pp. 440-442.)

Also, "The right to enforcement of an equitable servitude, like any other incorporeal property interest in the land of another, is subject to the equitable defense of estoppel. . . ." (P. 444.)

Applying these principles of law to this case, we believe that the trial court committed error in excluding the offered evidence, and that such error requires a reversal of the judgment in order that the court may, upon a new trial, consider such evidence in determining whether plaintiff is entitled to an injunction.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.