[Civ. No. 25708.   Second Dist., Div. One.   Dec. 4, 1961.]

WALTER F. KING et al., Plaintiffs and Respondents, v. ROBERT L. KUGLER, JR., et al., Defendants and Appellants.

Robert C. Pannell for Defendants and Appellants.

Raymond L. Winters for Plaintiffs and Respondents.

LILLIE, J.—Appeal is taken from a judgment enjoining defendants from building any structure of a height exceeding that of a single-story dwelling presently on the premises.

The following factual background is taken from an agreed statement. Plaintiffs and defendants reside in adjacent houses built in a 174-lot tract by the original grantor, Allied Gardens Corp. Both parties purchased their homes from Allied in 1952. Prior thereto, the original grantor recorded a declaration of conditions and restrictions, the terms of which applied to all lots in the tract; the deeds thereafter given to the 174 lot owners, including the parties herein, were made subject thereto. Although they did not recite the individual restric-

tions and conditions contained in the declaration, the deeds were made specifically subject to "covenants, conditions, restrictions, reservations, easements, rights and rights of way of record," and therein expressly so stated. The restriction in question contained in the declaration, and of record, provides: "2. That no structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed one story in height and a private garage for not more than three cars, together with the customary fences, walks and out buildings incidental to residential use"; and under paragraph 13, "[e]ach and all covenants and conditions" contained therein shall "run with the land, and shall be binding on all parties." Later defendants obtained a building permit from the City of Torrance to build a garage with a room overhead, and began construction. The proposed structure was to have a garage floor and ceiling and, above the garage, a room with a floor and ceiling. Plaintiffs, contending that the building exceeded "one story in height" in violation of Condition 2, brought the within action for injunctive relief.

The trial court found that Allied Gardens Corp. had recorded the declaration applying to all lots including 40 and 41 prior to their sale; that defendants had constructive notice of the declaration; that defendants' lot 41 is at a lower level than plaintiffs' lot 40; that there was an extensive view from plaintiffs' lot, important to the property and of immeasurable value to plaintiffs, and they relied on the restrictions for the preservation of their view when they purchased the property; that the proposed structure would impair plaintiffs' view; that defendants' plans for construction appear to be in conflict with Condition 2 in that the contemplated addition would embrace a structure of more than one story in height.

Appellants, arguing that building restrictions are strictly construed since there are public policies in favor of the free use of land and such restrictions must be certain and clear before they can be enforced by injunctive proceedings (*Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120]; *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945]), contend that the phrase used in Condition 2 "not to exceed one story in height," is too uncertain to support injunctive relief. Admitting "[t]he conceded purpose of the height restriction in this case was to preserve an upper owners' view," appellants also submit, somewhat obscurely

and without argument or citation of authority, that the "restriction fails to spell out this intent." (A.O.B., p. 3.)

The declaration recorded by the grantor sets up a comprehensive and uniform plan of restrictions for the improvement of the entire tract and for the benefit of each lot and its owner. The document expressly declares that the restrictions and conditions contained therein shall "run with the land and shall be binding on all parties" (Condition 13), apply to all lots in the tract and be mutually enforceable, reflecting a specific intent to create enforceable restrictions. (*Gamble* v. *Fierman,* 82 Cal.App. 180 [255 P. 269]; *Martin* v. *Holm,* 197 Cal. 733 [242 P. 718].) That the restrictions and conditions contained in the declaration of record apply, as therein provided, to all lots in the tract and were expressly carried into the deeds, is found in the language of each deed wherein the conveyance is specifically made subject to "covenants, conditions, restrictions, reservations, easements, rights and rights of way of record." (*Smith* v. *Rasqui,* 176 Cal.App.2d 514 [1 Cal.Rptr. 478].)

The general purpose of restrictions and conditions is ordinarily expressed in the instrument creating them. In the instant case the language of the declaration reflects the clear intent and desire of the grantor, for the improvement of the entire property and for the benefit of each lot and its owner, to formulate a common plan—to confine the land to residential purposes exclusively (Condition 1), specifically restricting the structures to single family dwellings not to exceed one story in height, three car garages and incidental out buildings (Condition 2) and fences, walls, et cetera, of a certain height (Condition 10); and the instrument so states. It also requires, in order to enforce this common plan, approval by a committee of all building and alteration plans for conformity and harmony of external design with "existing structures" and "as to location of the building with respect to topography and finished ground elevations." (Condition 3.) The language of the deeds referring to the conditions and restrictions of record and the recorded declaration containing the same, makes it clear that the lots conveyed were subject to the common plan set forth therein. (*Weston* v. *Foreman,* 108 Cal. App.2d 686 [239 P.2d 513]; *Kent* v. *Koch,* 166 Cal.App.2d 579 [333 P.2d 411].)

Although the instrument does not expressly declare the intent of the grantor to preserve the view of lot owners, it is obvious from the language used, the topography and the

finished ground elevations of the tract and the general physical appearance of the land and the existing structures thereon, that the purpose of the height restriction in the plan is to protect the lot owner's view from one elevation to another. Any suggestion that its purpose was, instead, to prevent the construction of multiple family dwellings or apartments, is not well taken, for other restrictions in the declaration expressly confine the use of the land to "residential purposes exclusively" (Condition 1) and the lots specifically to "one detached single family dwelling." (Condition 2.) (See discussion in *Weber* v. *Graner*, 137 Cal.App.2d 771 [291 P.2d 173].)

■ Contrary to appellant's claim, we see nothing vague, ambiguous or uncertain in the meaning of the restrictive phrase "one story in height," or as to what was intended thereby. It does not appear, nor have appellants contended, that the words have a technical, special or peculiar meaning; they merely argue that to control the height the grantor "should" have inserted a limit in feet and inches or other language from which the intended maximum height could have been inferred exactly. Therefore, the phrase is to be interpreted in its ordinary and popular sense rather than according to some strict legal or technical meaning. " 'This ordinary and popular sense is to be related to the circumstances under which the words are used, having in mind the purpose of the contract and the general situation which brought it into existence' (12 Cal.Jur.2d 353-354.)" (*Harrison* v. *Frye,* 148 Cal.App.2d 626, 628 [307 P.2d 76].) The words "one story in height" in Condition 2 are simply and concisely used; construed in the light of the entire instrument (*Paddock* v. *Vasquez,* 122 Cal.App.2d 396 [265 P.2d 121]) and the general plan and appearance of existing structures established in the tract (*Martin* v. *Holm,* 197 Cal. 733 [242 P. 718]), and given their plain, ordinary and popular meaning (*Wood* v. *Mandrilla,* 167 Cal. 607 [140 P. 279]; *Weber* v. *Graner,* 137 Cal.App.2d 771 [291 P.2d 173]; *Harrison* v. *Frye,* 148 Cal.App.2d 626 [307 P.2d 76]), we can only conclude, as did the trial court, that a structure not to exceed "one story in height" neither encompasses nor contemplates defendants' proposed structure, which is to have a garage floor and ceiling and a room with a floor and ceiling above the garage.

Resorting to the popular and common meaning of the phrase "first class buildings only" as used in a like restriction, the court in *Harrison* v. *Frye,* 148 Cal.App.2d 626 [307 P.2d 76],

held such language to be certain in its meaning and intent. Similarly we find the popular and common usage of the phrase "one story in height" to render the restriction sufficiently clear and certain to support injunctive relief. ■ The word "story" is defined in Webster's New International Dictionary, second edition (unabridged) at page 2487, as "A set of rooms on the same floor or level; a floor, or the habitable space between two floors . . . A *story* comprehends the distance from one floor to another." Commonly accepted as the ordinary meaning, this definition of the word "story" has been adopted by courts in and out of this jurisdiction. In *Biber* v. *O'Brien,* 138 Cal.App. 353 [32 P.2d 425], an issue arose concerning the height of a structure and what, in relation thereto, constituted a "story"; the court said at page 360: "A story has been defined as the habitable space between two floors (*Hunter* v. *Narragansett Electric Lighting Co.,* 50 R.I. 196 [146 A. 624, 625] ; *Vallen* v. *Cullen,* 238 Mass. 145 [130 N.E. 216] ; and as a set of rooms on the same floor or level. (*Lagler* v. *Bye,* 42 Ind.App. 592 [85 N.E. 36] ) ; . . ." Similar is the definition of "story" in the California Health and Safety Code used in relation to housing: "that portion of a building included between the finished floor and the finished ceiling of any floor . . ." (§ 18510), and its reference throughout the State Housing Act (Health & Saf. Code, div. 13, pt. 1).

■ Nor is there anything ambiguous about the term "height." It is simply used in Condition 2 to describe the measure of the structure upward from the ground. Its common definition is found in the State Housing Act: "The height of a building is the perpendicular distance from the actual adjoining sidewalk or ground level to the lowest point of the finished ceiling of the top story of the building." (Health & Saf. Code, § 15850.)

In the light of the restrictions and conditions contained in the declaration, the topography of the tract and elevation of the lots, and the existing structures thereon, the general plan of the grantor reflects its plain intent and desire to maintain a one story height for *all* structures in the tract for the purpose of preserving the view of the individual lot owners at varied elevations. In accord with this plan, the grantor originally constructed no building outside of the restrictions, and today the structures, including garages and out buildings in the 174-lot tract, are all only one story high.

Appellants' illustrations of "the vagueness of the restric-

tions'' (A.O.B., p. 4) are concededly extreme, the obvious result of strained constructions of an ordinary, common phrase, and we deem them to be unreasonable and of no validity in their argument.

Appellants' claims that the one story height restriction does not apply to a garage, thus the structure—a garage with a second story on top—is not prohibited; and that in any event, the building may be considered an ''out building incidental to residential use'' to which the restriction does not apply, are wholly without merit. The general plan expressed in the declaration and reflected in the physical appearance of the tract and the existing structures, and the obvious purpose of the height restriction, point to the only reasonable construction of Condition 2—that *no* structure, be it a ''detached single family dwelling,'' a ''private garage for not more than three cars'' or ''out buildings incidental to residential use,'' shall be more than one story high; and it is apparent that the grantor did not contemplate within the terms ''private garage'' and ''out buildings,'' or intend to include therein, a garage with a second story on top. Moreover, ''garage'' in its ordinary usage does not normally encompass a second story; the term is commonly used to mean a structure for the housing of a vehicle—in the instant case ''not more than three cars.'' ''Garage'' as in Webster's New International Dictionary, second edition, (unabridged), is defined as ''1. A building for housing automotive vehicles.'' (P. 1033.) And it is so used in connection with housing in the California Health and Safety Code, and defined therein as, ''any space in any building used for the storage of automobiles.'' (§ 18507.) Thus, a reasonable interpretation of the term ''private garage'' as used in Condition 2, is a one story structure to be used exclusively for the storing and housing of not more than three vehicles. For this type of building a second story is not necessary, contemplated or reasonable.

Nor, to circumvent the plain intent of the grantor, can defendant's proposed structure be construed as an ''out building incidental to residential use.'' ''Out building,'' within the meaning of a covenant of this nature which also specifically mentions other structures including a ''private garage,'' could not be reasonably construed to encompass either a single story garage or one with a second story on top of it. Moreover, defendants' proposed two story building is clearly not what is meant by ''incidental to residential use'' as the phrase is used in Condition 2. It was actually intended

basically as a garage and that defendants proposed to add a story above it, depriving it of its "garage" classification, does not permit the transformation of the structure into an "out building incidental to residential use" for the purpose of avoiding the application of the restriction. In any event, such a construction is of little aid to defendants, for we have already held, in accordance with the common plan of the grantor, that "out buildings incidental to residential use" are included in the structures subject to the one story height. It would be incongruous to restrict the dwelling and garage to one story, yet permit an incidental "out building" to exceed the prohibited height; nor was this the plan or intent of the grantor.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.