[Civ. No. 34057. Second Dist., Div. Five. Apr. 17, 1970.]

SYDNEY M. SELIGMAN et al., Plaintiffs and Respondents, v. JERRY TUCKER et al., Defendants and Appellants.

**COUNSEL**

Drabin, Reese & Johnson, Percy Drabin and Earl D. Reese for Defendants and Appellants.

Manuel Seligman for Plaintiffs and Respondents.

**OPINION**

**REPPY, J.**—This is an appeal from a judgment for a final mandatory injunction requiring defendants to remove or lower an addition to a single-family residence, for attorney's fees, and for court costs.

The facts which give meaning to certain concessions of defendants and to their contentions are as follows:

Around February 1963 Bensonia Investment Company acquired a 37-vacant-lot subdivision in a hillside area of Sherman Oaks, California, for the speculative purpose of constructing single-family residences to be sold to the public. The slope of the hills was from higher land at the south toward lower land at the north. Bensonia proceeded to build the homes. They were located on each of the lots so as to achieve pleasing views of the landscape across areas left open on other lots. A few of the homes, including that acquired by plaintiffs, had panoramic views of the lower San Fernando Valley. After the homes were constructed, and just a few days before the notice of completion for all the construction was recorded (November 5, 1963), a general-plan-type written declaration of restrictions calculated to provide and preserve an attractive, sightly, well-kept, and adequately drained subdivision of single-family residences with compatible out buildings, was executed and recorded by Bensonia (October 29, 1963). Bensonia then conveyed to Broadstone Development Company which carried out the process of selling the homes.[1] Included in the restrictions was one for the protection of the views which existed for the various homes. It reads, in pertinent part, as follows: "No . . . structure shall be . . . erected . . . upon any lot in such location or in such height as to unreasonably obstruct the view from any other lot . . . ." The restric-

---

[1] Due to financial difficulties, before all the residences were sold, Broadstone had to convey back to the original subdivider from whom Bensonia had purchased, who apparently proceeded to sell the balance of the homes.

tions recited that they were enforceable by the declarant, any owner, or an architectural committee. The restrictions contained no other reference to an architectural committee, to its makeup or functions. There is no indication that any such committee (in aid of enforcement of the view restriction) had any right of preliminary determination as to whether an obstruction was unreasonable; or that any such committee came into being. One clause in the restrictions precluded the erection of television aerials. Following a number of meetings about the restrictions centered on the television aerial taboo, wherein a unanimous consensus was developed that the restriction should not be followed because of the cost of "cable" service, a general disregard for that restriction came about, and practically all residents in the tract, including plaintiffs and defendants,[2] installed roof aerials.

Plaintiffs, husband and wife, purchased the one-story residence located on lot 32 situated where Stone Canyon Avenue makes a right angle curve from a west to east course to a south to north course. Defendants purchased lot 31 which had a two-story house on it. The lot was to the north and at a lower level than plaintiffs' residence and the home faced on the south to north course of Stone Canyon Avenue. Plaintiffs' home fronted on the west to east course of the street. Thus, the rear facade of plaintiffs' home, which was the longer dimension of its rectangular shape, faced to the north and overlooked defendants' lower level lot extending toward the north. The rear portion of defendants' lot was open. This arrangement afforded the means for a view from the residence of the plaintiffs. A facsimile of a diagram, which is part of the evidence, makes clear the lot arrangement just described:

[2]The restrictions provided that owners of 65 percent of the aggregate area of the subdivision who also are owners of 75 percent of the building sites could cancel any restrictions. It is not clear whether the trial court felt that such a cancellation had been accomplished as to television aerials through the meetings above mentioned or whether the restrictions simply became unenforceable because of equitable considerations.

Windows of the living room, dining room and kitchen of plaintiffs' home provided a full view, and those of the bedroom a partial view of a wide expanse of the lower valley. From parts of the pool terrace plainitffs had a similar view.

In February 1968 defendants planned and contracted for the construction of a flat-roofed rumpus room as an addition to their home which was to extend fully along the west or rear wall of their house and 26 feet out toward the west, and which was to have a floor raised 36 inches above the lower floor of the main house (with steps leading from one level to the other) so as to provide what defendants referred to as a "conversation pit" sunk into the floor level of the rumpus room and was to have windows having a view of the lower valley. The contract price for the improvement was $6,250. Fixtures, which were to be self-procured and installed, were to cost $750.

On February 28, 1968, when the addition was under construction, plaintiffs filed suit for declaratory relief, for a preliminary injunction to halt the construction and for a final mandatory injunction requiring the removal of the structure. The case was tried, and the trial court found that the view restriction was valid and enforceable; that plaintiffs' view from their residence had been unreasonably obstructed; and that the interference with their enjoyment brought about thereby was an irreparable injury which money damages could not adequately compensate. The trial court issued a judgment which included a final injunction of a mandatory nature which required defendants to remove the improvement, or lower it three feet, an award of $2,000 under a clause in the restrictions authorizing an award of attorney's fees to the successful litigant in a court contest over restrictions, and an allowance to plaintiffs of their costs of suit.

Additional facts and trial circumstances will be presented in connection with the discussion of defendants' contentions.

On appeal, with commendable astuteness, defendants have accepted the propositions that there is substantial evidence in the record that plaintiffs purchased their residence with knowledge and belief in the validity of, and reliance upon, the view restrictions; that the panoramic view of the lower valley from the rooms and pool terrace mentioned above was a significant inducement of their purchase and a source of great enjoyment and satisfaction during their occupation; that the construction of the rumpus room by defendants substantially obstructed that view[3] that the floor

---

[3]There was testimony from one witness that the view obstruction amounted to about 80 percent; however, the trial court, in its memorandum of opinion, mentioned a 40 percent obstruction.

and roof elevation of the addition, for reasons of aesthetic and social use, were set three feet higher than was compatible with existing physical conditions; that defendants had both constructive and actual notice of the view restrictions; that defendants did not have a good faith belief that their addition would not substantially impair the view of plaintiffs;[4] and that plaintiffs acted promptly in notifying defendants that they considered that the full completion of the rumpus room would violate the view restriction and in filing their injunction suit.

With the same good judgment, defendants, obviously cognizant of the fact that at trial they had offered no proof of expenditures on the project up to March 13, 1968,[5] or of any claim by their contractor that he would have been entitled to special damages if defendants had called off the construction, do not challenge the final mandatory injunction on the ground that their provable financial commitment to the project and the expense of removal or modification would be so disproportionate to the harm to plaintiffs that only money damages should have been awarded. (See, e.g., *Brown Derby Hollywood Corp.* v. *Hatton,* 61 Cal.2d 855, 858 [40 Cal. Rptr. 848, 395 P.2d 896]; *Dolske* v. *Gormley,* 58 Cal.2d 513, 520-521 [25 Cal.Rptr. 270, 375 P.2d 174]; *D'Andrea* v. *Pringle,* 243 Cal.App.2d 689, 695 [52 Cal.Rptr. 606].)

## CONTENTIONS

Primarily defendants concentrate their attack on the validity and enforceability of the view restriction clause. It is contended that its language is too vague in that it cannot be told what views are involved and in that no standards are set up as a guide for compliance with, or enforcement of, the restrictions other than the term "unreasonable obstruction" which, defendants urge, is inadequate because it is insufficiently definitive. On the issue of invalidity, defendants further contend that the view restriction became ineffective by the time defendants commenced construction of their rumpus room because of a general pattern of noncompliance which, complain defendants, they were not allowed to fully prove by the trial court.

Alternatively, defendants contend that plaintiffs are disqualified to have the view restrictions judicially applied in their favor because (1) plaintiffs were in violation of another restriction, the ban on television aerials and

---

[4]Upon inquiry their contractor told defendants only that he did not think the rumpus room would obstruct the view. Plaintiffs previously had had defendants trim down a hedge which had interfered with the same view.

[5]Under a stipulation, made to insure that there would be no preliminary injunction, expenses after March 13, 1968, were not to be provable in connection with a balancing of equities referenced to the question of whether the judgment would be for a mandatory injunction or for damages.

(2) plaintiffs' residence was not reduced in value by reason of the view obstruction.

On the premise that they would successfully defeat defendants' appeal, plaintiffs also ask that we allow and set fees with respect to the legal services rendered by their counsel in this stage of the litigation under a clause in the restrictions providing that, in any proceeding to restrain the violation of any provision, the losing party shall pay the attorney's fees of the winning party in an amount fixed by the court.

### 1. *Validity and Enforceability of View Restriction Clause*

It is clear from the surrounding circumstances and the timing of the filing of the declaration of restrictions that the views dealt with in the "view-protection" clause were those which the residences had upon their completion, by reason of their orientation on the lots and their room and window locations and of the open spaces left on other lots. (Cf. *King* v. *Kugler*, 197 Cal.App.2d 651, 654-655 [17 Cal.Rptr. 504, 92 A.L.R.2d 872].)

The term "unreasonably obstruct" is to be applied to this view factor, and it is in this aspect wherein it must be determined whether or not the term is too vague or uncertain to allow the restriction to be enforced. Concededly, the restrictions contain no specific type of standard as to how much obstruction is not to be tolerated, such as a given percentage of the originally available view. The guide is simply not to be unreasonable. The validity of this gauge should depend upon whether persons who become involved could be expected to have a general concept of what would be unreasonable and upon whether courts could, and would, undertake to make findings on the point as given cases are brought up for ruling. It is felt that normally conscientious persons of average prudence and intelligence would have such a concept, and numerous decisions exist which indicate that courts will readily deal with the attributes of reasonableness or unreasonableness. In some cases the particular attribute may not be articulated but rather is implied in a contractual document or governing statute. In either circumstance the court carries out the function of determining what is reasonable or unreasonable in light of the matter and the circumstances involved and renders its decision accordingly. It will suffice to list just a few examples.

*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 60 [216 P.2d 859]: A criminal statute is sufficiently certain notwithstanding that it has an element in the definition as to which estimates might differ. (See also *In re Daniels*, 183 Cal. 636, 647 [192 P. 442, 21 A.L.R. 1172].)

*People* v. *Associated Oil Co.,* 211 Cal. 93, 108 [294 P. 717]: The court interpreted a statute which prohibited "the unreasonable waste of natural gas."

*Petersen* v. *Friedman,* 162 Cal.App.2d 245, 247 [328 P.2d 264]: In question was an easement to have an unobstructed view to the extent that said view will be enjoyed by limiting any structures or trees on the property. (Obviously this easement would have to be enforced by the rule of reason.) A television antenna was found to have obstructed the view in violation of the condition.

Government Code, section 191: The government may condition a deed to reserve a view. (Impliedly, an unreasonable obstruction would be a violation.)

*King* v. *Kugler, supra,* 197 Cal.App.2d 651: A restriction of the import "not to exceed one story in height" was upheld. Although not specifically treated with in the decision, it must be expected that this court-approved restriction would impliedly prohibit an unreasonably high one-story structure and that this restriction would be enforceable. Compare with *Smith* v. *North,* 244 Cal.App.2d 245 [53 Cal.Rptr. 94] (cited by defendants): Restriction there was for no more than one floor above ground level. The court found the restriction was imposed to protect view. A structure nine feet above grade level was approved (apparently as not being unreasonable). The decision, by inference, stands for the proposition that if the one-story structure had been higher and so had obstructed the view, injunctive relief by way of removal would have been proper.

*Hannula* v. *Hacienda Homes,* 34 Cal.2d 442 [211 P.2d 302, 19 A.L.R. 2d 1268]: Court enunciates standard of reasonableness to govern admitted authority of original grantor to approve or not new construction. The standard to regulate this exercise of authority as expressed in the covenant —"for the benefit of all owners of property in the tract"—was held a sufficient guide for the court.

In the constitutional rights area of the criminal law field where lack of vagueness and uncertainty must be the watchword, our state Supreme Court has recently affirmed the appropriateness of the concept of reasonableness in dealing with guidelines related to criminal conduct. "The law is replete with instances in which a person must, at his peril, govern his conduct by such non-mathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the 'reasonable or prudent' speed to drive his car in the circumstances (Veh. Code, § 22350), while another may be incar-

cerated in state prison on a conviction of wilful homicide if he misjudges the 'reasonable' amount of force he may use in repelling an assault [citation]. ▪ As the Supreme Court said in *Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344 [75 L.Ed. 374, 382, 51 S.Ct. 153], 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (*People* v. *Daniels*, 71 Cal.2d 1119, 1129 [80 Cal.Rptr. 897, 459 P.2d 225].)

▪ We conclude that the subject view restriction is not too vague or uncertain to foreclose injunctive enforcement.

### 2. *Alleged Limitation of Proof of Violation*

In defense, defendant called a Mr. Braverman, a resident of the tract, and, incidentally, a realtor, and asked him if he had a house in the tract with a view of the valley. Plaintiffs objected to the question on the ground that it was immaterial. Counsel for defendants advised the trial court that he was prepared to prove that the neighbor below Braverman had constructed a patio which was roofed over in the same manner as was defendants' rumpus room, and that Braverman's view was obstructed in the same manner as was plaintiffs'. Observing that he did not understand the law to be that one violation makes the restriction unenforceable[6] and alluding to the provision in the declaration of restrictions that failure of any property owners to enforce any restrictions shall not be deemed a waiver as to others of the right to do so[7] (par. XV), the trial court sustained the objection. Defense counsel went on to other matters.

Defendants now argue on appeal that they intended to prove a series of new violations, had already proved one in the front wall erected by plaintiffs and another in the growth of hedge-trees along the boundary between the properties of the parties. However, defendants' offer of proof was limited to the one instance involving Braverman. Defense counsel made no reference to an intention to prove other violations. He failed to call the other claimed proofs of violation to the attention of the trial court. Moreover, the tree-hedge turned out to be the one that plaintiffs had defendants trim lower so that it would not obstruct their view; and plaintiffs presented

---

[6]The trial court was correct in its understanding. It is necessary that there be a sufficient number of violations so that the purpose of the general plan is undermined. (Cf. *Bryant* v. *Whitney*, 178 Cal. 640 [174 P. 32]; see also Rest., Property, Cal. Annot. (1950) § 561.)

[7]It is unnecessary to determine if a saving clause such as this would protect against the effect of a number of violations having the result of upsetting the general plan. It is doubtful.

counterproof from their southerly neighbor that the front wall did not obstruct his view and that he had given his approval of its erection.

■ Thus, there is no merit to defendants' contentions that they were erroneously prevented from showing numerous violations so as to bring them within the purview of the doctrine of equitable obsolescence of restrictive covenants. It would have served no useful purpose for the court to have admitted evidence of the one alleged violation involving the Braverman residence. The other two claimed violations had not been substantiated, and defendants made no offer to prove others. The judge made a view of the area. It is to be concluded that he found no violations on his own. No pattern of noncompliance with the view restrictions was established or prevented from being proved. Such a pattern was shown as to the ban on television antennas, but it was never established that the aerials which were put up constituted a violation of the view restriction as well. ■ Further, even if it were proper to show that the specifically enumerated television antenna restriction was no longer in force due to general disregard or changed conditions, it would not necessarily prevent enforcement of the unrelated and also separately enumerated view restriction.

### 3. Clean Hands

Defendants cite authority that one who himself is in violation of even an *unrelated restriction* cannot secure the aid of equity to prevent the violation of the restriction in litigation (4 Pomeroy's Equity Jurisprudence (4th ed. 1919) § 1702, p. 3972 et seq; but cf. Rest., Property (1944) § 560, p. 3302 et seq.), and they point to the fact that plaintiffs had erected a television aerial. The proposition appears to be drawn from isolated holdings. No California cases have been found. ■ In any event the court found, on substantial evidence, that there had been a practically unanimous decision by the tract members to disregard the television aerial ban and an almost unanimous nonobservance. Under these circumstances, plaintiffs' action of erecting an aerial would not tarnish them with unclean hands.

### 4. Reduced Value of Plaintiffs' Residence

Citing the proposition that a property owner cannot qualify for equitable protection against an alleged restriction violation unless he can show that his property has been reduced in value by the violation (see *Bryant* v. *Whitney, supra,* 178 Cal. 640), defendants urge that plaintiffs failed to establish such proof because the opinion of their appraiser that there was such a variance in values ($57,000 with view; $47,500 with view impaired) was put into question because a comparable sale without a view had a price equivalent to the appraiser's stated value for plaintiffs' residence before the

view impairment. ■ However, there was a difference in the ages of the two homes, and, fundamentally, the worth of the opinion was a matter for the trial court to evaluate.

5. *Counsel Fees*

■ The trial court is the more appropriate tribunal to consider the matter of counsel fees. (*Oakland Cal. Towel Co.* v. *Roland,* 93 Cal.App.2d 713, 719 [209 P.2d 854].) Counsel were so advised at oral argument, and so are anticipating that we will, as we do, defer this subject to the trial court for action upon the return of the remittitur.

The judgment is affirmed. The matter of allowance of further counsel fees is to be decided by the trial court.

Kaus, P. J., and Stephens, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 10, 1970.