526 P.2d 747

James W. RILEY and Lois Riley, his wife, Appellants,

v.

George STOVES and Isabel H. Stoves, his wife, Joe H. Baker and Velois R. Baker, his wife, Harold R. Constable and Maxine T. Constable, his wife, Eldon S. Johnson and Beryl Johnson, his wife, Appellees.

No. 2 CA–CIV 1573.

Court of Appeals of Arizona, Div. 2.

Sept. 23, 1974.

Skousen, McLaws & Skousen, P. C., by Richard E. Skousen, Mesa, for appellants.

Wade, Robson, Palmer & Bethea, Ltd., by Duane Wm. Schultz, Mesa, for appellees.

## OPINION

HATHAWAY, Chief Judge.

Defendants James W. and Lois Riley appeal from a judgment against them which enjoined their further violation of a restrictive covenant and from an award of attorneys' fees to plaintiffs.

Plaintiffs and defendants are all owners of lots comprising Enchanted Acres Subdivision, Unit One, a mobile home subdivision consisting of 39 lots. At the time the defendants purchased their lot, it was subject to a recorded Declaration of Restrictions which included the following:

"AGE LIMITS

3. Restricted to persons 21 years of age and older. One family unit per lot. Developers are not restricted in regard to age until subdivision is completed."

It was admitted at trial that defendants lived on their lot with two children under 21 years of age. On appeal, they assert that the above-quoted restriction is invalid upon several grounds.

Defendants first contend that the restriction is too vague to be enforceable. They argue that it is susceptible of two meanings, i. e., it can be construed as prohibiting any one under 21 years of age from living in the subdivision or it can be construed as forbidding only the sale of a lot to one under 21 years of age.

When a court is faced with an ambiguous or vague restrictive covenant, the person seeking to enforce the restriction has the burden of proving that it applies to the particular facts. He must meet this burden with evidence showing that, despite the ambiguous language of the restriction, both the intent of the parties and the purpose of the restriction are clear. In the absence of such a showing, the ambiguity will be resolved in favor of the free use and enjoyment of the property and against the restriction. Palermo v. Allen, 91 Ariz. 57, 369 P.2d 906 (1962); R & R Realty Co. v. Weinstein, 4 Ariz.App. 517, 422 P.2d 148 (1966).

It is established that:

". . . the cardinal principle . . . is the intention of the parties as it may appear or be implied from the instrument itself. [Footnote omitted] If such instrument is ambiguous or its meaning is not clear, the circumstances and pertinent facts surrounding its execution and known to the parties are to be considered in determining their intention. (Footnote omitted) Thus, the precise terminology employed in a covenant will

not bind the court in its construction of the parties' intent if other facts exist which are more expressive or decisive of this point." 20 Am.Jur.2d, Covenants, § 5, p. 579.

■ Restrictions which are not absolutely clear are to be interpreted in the ordinary and popular sense, related to circumstances under which they were used, having in mind their purpose and general situation. King v. Kugler, 197 Cal.App.2d 651, 17 Cal.Rptr. 504 (1961); Harrison v. Frye, 148 Cal.App.2d 626, 307 P.2d 76 (1957).

In King v. Kugler, supra, appeal was taken from a judgment which enjoined the defendants from erecting a structure of a height exceeding that of a single-story dwelling which was already located on the land in question. Appellant argued that the restrictive phrase "one story in height" was vague. The court maintained that the words were being used in a common and popular sense and were to be viewed "in the light of the entire instrument . . . and the general plan and appearance of existing structures established in the tract." 17 Cal.Rptr. at 507. The court thus found no ambiguity in the term.

The appellant in Harrison v. Frye, supra, contended that the term "first-class residence building" was ambiguous. The court indicated however, that the terms used were to be interpreted in their ordinary sense, using Roget's Thesaurus as authority for synonyms. It stated:

" 'In the absence of technical words or phrases whose meanings are obscure, the office of interpretation belongs to the court. If the contract explains the meaning of the words, there is no need to go outside the contract. If, however, because of the use of technical or trade terms, the language is not plain, the testimony of those skilled in the art or experts in the field is admissible as to the meaning of the language. Where the words are not used in any special or local sense, their meaning is not a matter to be established by expert testimony, and they are to be given their ordinary meaning.' (12 Cal.Jur.2d 356–357.)"

In the case at hand, the phrase "restricted to persons 21 years of age and older" is to be construed in its popular sense and in relation to the circumstances of its use. The trial court properly received evidence of such circumstances. Plaintiffs introduced a promotional brochure prepared by the common grantor who recorded the restrictions which states that the subdivision is "restricted to adult living." Each plaintiff who testified stated he had understood before purchasing his lot that the restriction in question effectively precluded children from living in the subdivision. Plaintiffs relied upon the age-limit restriction in purchasing their lots.

The testimony of plaintiff Harold R. Constable is typical in this regard:

"In the first place we searched for quite some time to find an adult area that suited us; was quiet especially for my wife in her condition. Two specialists in California advised her due to her condition to move into a quiet area. She has a nervous condition and an arthritic condition. So the best place we figured out to move for her benefit would be to move to Arizona. And we searched in many places around here and due to these restrictions and being away and quiet this was our number one choice for residing here."

■ From the language of the restriction and the circumstances of its use, it appears self-evident that what was being sought was the prohibition against persons under 21 years of age residing in the subdivision. We believe the evidence presented compelled the trial court's interpretation of the restriction as a mutual agreement by each lot owner that persons under the age of 21 years would not be allowed to live in the subdivision.

■ Of no consequence is appellants' contention that the restriction violates A.

R.S. § 33–303 and is therefore unenforceable. Section 33–303 [1] provides as follows:

"A person who refuses to rent to any other person a place to be used for a dwelling for the reason that the other person has a child or children, or who advertises in connection with the rental a restriction against children, either by the display of a sign, placard, written or printed notice, or by publication thereof in a newspaper of general circulation, shall be punished for the first offense by a fine of not less than one hundred nor more than five hundred dollars, and for a subsequent conviction by a fine of five hundred dollars, by imprisonment for three months in the county jail, or both."

Section 33–303 clearly applies only in a rental situation. While a situation could arise wherein an owner of a lot could decide to rent his lot and persons with children might desire to rent it from him, that situation is not before us and we give no opinion as to the effect § 33–303 would have upon the restriction. The situation before us involves one who purchases a lot promising generally not to allow children to live thereon and who moves onto the lot with children. There is no contention that this aspect of performance under the restriction is illegal. We will not void an agreement in the form of a restrictive covenant merely because a performance which could possibly be rendered thereunder might at some future date violate state law.

Defendants also argue that A.R.S. § 33–303 sets out a broad public policy of non-discrimination against children in housing and that enforcement of the age limit restriction would violate this public policy. As noted above, § 33–303 applies only to rental housing. If the legislature had intended to prohibit discrimination as to owner-occupied housing, it could have easily extended its mandate beyond the landlord-tenant situation. The section is clearly a measure designed to prevent landlords, in periods of housing shortages, from totally excluding families from housing facilities.

Defendants next contend that the trial court's enforcement of the restrictive covenant violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has long held that the enforcement of a racial restrictive covenant by a state court could constitute state action denying equal protection of the laws to members of the excluded race. Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In *Shelley*, the court reasoned as follows:

"We have noted that previous decisions of this Court have established the proposition that judicial action is not immunized from the operation of the Fourteenth Amendment simply because it is taken pursuant to the state's common-law policy. [Fn. omitted] Nor is the Amendment ineffective simply because the particular pattern of discrimination, which the State has enforced, was defined initially by the terms of a private agreement. State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to exertions of state power in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this Court to enforce the constitutional commands." 334 U.S. at 20, 68 S.Ct. at 845, 92 L.Ed. at 1184.

Defendants assert that enforcement of the restriction unlawfully discriminates between adults with children and other segments of society as well as between persons under 21 and those older.

The Fourteenth Amendment does not require a state to treat all people

1. The provision of A.R.S. § 33–1317 (Laws 1973, Ch. 103 § 3) enacted as part of the Arizona Residential Landlord and Tenant Act, are identical to § 33–303 first enacted in 1921 (Laws 1921, Ch. 126, § 1–3). However, § 33–303 has not been repealed.

identically. State action, even though discriminatory, generally will not be held violative of the Equal Protection Clause where it can be shown that the classification bears some rational relationship to a permissible state objective.[2] Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The standard of review is particularly confusing in this case since the state action consisted of the trial court's enforcement of the restriction. Because the state had no hand in drawing up the age-limit restriction, it is unrealistic to examine either the restriction or its enforcement by the trial court in terms of whether it bears a rational relationship to some permissible state objective.[3] Because the restriction in question was privately drawn, we feel it appropriate to first examine any legitimate purpose or purposes such a restriction could possibly serve. Also, we should ascertain the extent to which the restriction is a reasonable means to accomplish the private objective when considered in light of its effect upon defendants.

■ The restriction flatly prevents children from living in the mobile home subdivision. The obvious purpose is to create a quiet, peaceful neighborhood by eliminating noise associated with children at play or otherwise. The testimony given by the plaintiffs indicates that they prefer to live away from children, that children living in their neighborhood tend to disturb them, and that they bought their respective lots upon the assumption that Enchanted Acres, Unit I, would be an "adult community."

Whether the objection of isolation from children can be upheld is a question of fact. Defendants rely heavily upon the case of Molino v. Mayor and Council of Bor. of Glassboro, 116 N.J.Super. 195, 281 A.2d 401 (1971). In that case, the Superior Court of New Jersey held that a zoning ordinance which had the effect of keeping children out of the municipality violated the Equal Protection Clause. The municipality had admitted that it sought to exclude children because they would require more schools and higher taxes. The court also expressly found a need in the community for living units which would accommodate low-income families with children.

Here, the common developer subdivided a large tract of land. He obviously felt that a portion of the market for mobile home lots desired an adult community. He therefore set aside a portion of the mobile home lots in Unit One for exclusive adult living. There was no testimony as to any shortage of housing in the area or any desperate need for housing which would accommodate families with children as there was in *Molino*, supra. We see no objection to the setting aside of a small area which would exclude children. It fulfilled a legitimate need of older buyers who sought to retire in an area undisturbed by children.

In Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the United States Supreme Court recently upheld a zoning ordinance excluding three or more unrelated persons from living in the village. The court held that a quiet, low-density village was a permissible state objective and that the ordinance in

2. However, where the classification is inherently "suspect" i. e., racial, or where it infringes a fundamental right, a stricter standard of review will be applied. See Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1967); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). There is no assertion that these circumstances exist in the present case.

3. In neither *Barrows* nor *Shelley*, supra, wherein it was held unconstitutional for a state court to enforce a restrictive covenant, was there discussion of a state purpose in enforcing the restriction. Because the restrictions were based upon race, it was more or less assumed that enforcement was invalid if found to be state action.

question was a rational means of achieving such objective. We see little if anything to distinguish the private restriction presently before us. It simply involves a prohibition of certain combinations of persons living on a lot in one portion of the subdivision.

It is of interest here to note that the United States Congress has recognized the need of elderly Americans for adult communities. It has adopted several programs to provide housing for the elderly. See 12 U.S.C. § 1701a et seq; 42 U.S.C. § 3001 et seq.; 42 U.S.C. § 1485. An age minimum of 62 years has been set for occupancy of these housing developments. See 12 U.S.C. § 1701q(d)(4); 42 U.S.C. § 1485(d)(3). These sections represent an implicit legislative finding that not only do older adults need inexpensive housing, but also that their housing interests and needs differ from families with children. The age limitation is designed in part to prevent the distractions and disturbances often caused by a large number of children living in the development.

We do not think the restriction is in any way arbitrary. It effectively insures that only working or retired adults will reside on the lots. It does much to eliminate the noise and distractions caused by children. We find it reasonably related to a legitimate purpose and therefore decline to hold that its enforcement violated defendants' rights to equal protection.

■ Defendants argue that the age limit of 21 is invalid since under our laws the legal age of majority is now 18. An identical challenge has often been made as to age limits set by a legislative body. The answer is best given by the following words of Mr. Justice Holmes in Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32 at 41, 48 S.Ct. 423 at 426, 72 L.Ed. 770 at 775 (1928) (dissenting):

"When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark."

We find no merit to defendants' contention that the trial court's order enforcing the restriction violated their constitutional rights.

■ Defendants next argue that the equitable defense of "unclean hands" interposed by them should have been applied by the trial court. We have reviewed the evidence and conclude that it supports a trial court finding that plaintiffs have fully complied with the restriction they seek to enforce. While they may have violated other restrictions, it is elementary that this in and of itself does not preclude them from equitable relief. See Restatement of Property, § 560, p. 3305; Powell on Real Property § 683, p. 226; Condos v. Home Development Co., 77 Ariz. 129, 135, 267 P. 2d 1069 (1954).

Defendants point to evidence that children lived in neighboring subdivisions and often passed through Enchanted Hills Acres, Unit Two; that an owner could legally rent his lot to persons with children under A.R.S. § 33–303, and that the owner who recorded the restrictions retained the right to live with children upon his lot until completion of the subdivision. They argue that these facts preclude equitable enforcement of the restriction since they show changed conditions.

■ It is true that where frequent violations of restrictions have been permitted, the restrictions will be considered

**230**

abandoned and unenforceable. O'Malley v. Central Methodist Church, 67 Ariz. 245, 194 P.2d 444 (1948). However, it has been held that the use of property surrounding a restricted subdivision is not in and of itself enough to justify a violation of the restriction. Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132 (1931). Equity will enforce the terms of restrictive covenants unless changes in the surrounding areas are so fundamental or radical that the original purposes of the restrictions are defeated and frustrated. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964). We do not believe the evidence in this case compelled the trial court to make such a finding.

Defendants finally object to the trial court's award of attorneys' fees to plaintiffs. It is well established that attorneys' fees will not be awarded unless such award is provided for by statute or an agreement of the parties. Plaintiffs argue that the award is supported by the following restriction:

> "In the event of any violation or threatened violation of any of the covenants herein, the Architectural Control Committee or any owner of any lot in the subdivision may bring action at law or in equity, either for injunction, action for damages or such other remedy as may be available. *In the event the said committee recovers judgment* against any person for a violation of any of the covenants herein, it shall also be entitled to recover from such person reasonable attorney's fees." (Emphasis supplied)

It is evident that the agreement provides for a recovery of attorneys' fees only in the event the Architectural Control Committee sues and recovers judgment. Since this suit was brought by individual lot owners, this agreement does not apply. It was therefore error to award attorneys' fees and we order that said award be deleted from the judgment.

Affirmed as modified.

KRUCKER and HOWARD, JJ., concur.