[No. B163525. Second Dist., Div. Six. Mar. 17, 2004.]

SYLVAN L. KAPNER, as Trustee, etc., Plaintiff and Appellant, v.
MEADOWLARK RANCH ASSOCIATION, Defendant and Respondent.

1184

**COUNSEL**

Gary R. Ricks and Brigham J. Ricks for Plaintiff and Appellant.

Kay S. Kuns for Defendant and Respondent.

OPINION

GILBERT, P. J.— ■ A property owner claims a prescriptive easement for improvements that he encloses on a parcel held in common with other owners. Such a claim is in the nature of adverse possession. Here we hold, among other things, that adverse possession may not masquerade as a prescriptive easement.

We affirm the trial court's order requiring the property owner to sign an encroachment agreement or remove the encroachment.

FACTS

In 1960, Bryant E. Myers owned Meadowlark Ranch, a 437-acre parcel in Santa Ynez, California. In June of 1960, Myers recorded a declaration of protective covenants and restrictions (PC&R's) for Meadowlark Ranches, but did not attach a legal description. The PC&R's created a "Ranch Committee" to administrate them.

In June of 1960, Myers recorded a deed to Security Title Insurance Company (Security Title) conveying three parcels lying within Meadowlark Ranch. Parcel One describes a 60-foot wide roadway (roadway parcel). The other two parcels are a strip of land for recreational purposes and an access road from Highway 246. Security Title quitclaimed the parcels back to Myers the next day.

In August of 1960, Myers rerecorded his declaration of PC&R's. This time he attached a metes and bounds description of the perimeter of the 437-acre ranch and portions of a map showing the ranch divided into parcels of approximately 20 acres. No official subdivision map has ever been recorded.

The PC&R's were amended five times, most recently in July of 1984. The fifth amendment made extensive revisions and additions to the original covenants. The amendment recited that it superseded all previous provisions. Among other matters, it established the Meadowlark Ranch Association (MRA) for the purpose of administrating the PC&R's. The amended PC&R's provided that the MRA shall have the obligation "to operate and maintain, or provide for the operation and maintenance of all private roads[.]" The amendment did not contain its own legal description, but referenced prior recordings of declarations of PC&R's, including the declaration recorded in August of 1960.

In September of 1986, Sylvan L. Kapner, as trustee of the Kapner revocable trust (Kapner), obtained a five-acre portion of what was originally

designated as Parcel 14. By the same conveyance, he also obtained a 1/80th undivided interest in the roadway parcel. A paved road 20 feet wide meanders through the 60-foot wide roadway parcel.

When Kapner purchased his property, it was unimproved. By November of 1987, he had completed improvements including a house, driveway, gate and perimeter fence. The county issued a certificate of occupancy on November 20, 1987.

In 2001, the MRA retained a surveyor to survey the ranch's roadways. The survey showed that some of Kapner's improvements, including portions of his driveway, gate and perimeter fence, encroached onto the 60-foot wide roadway parcel. None of the improvements, however, encroached onto the paved portion of the road.

MRA notified Kapner of the encroachments, but Kapner refused to remove them or sign an encroachment agreement. The proposed agreement would allow the encroachments to remain, subject to their removal at Kapner's expense should the need arise.

Kapner filed an action against the MRA for declaratory relief and for quiet title. The MRA cross-complained for declaratory and injunctive relief. After trial, the court found in favor of the MRA and against Kapner. The judgment required Kapner to sign the encroachment agreement or to remove the encroachments.

## DISCUSSION

### I

Kapner contends the trial court erred in finding he has not acquired a prescriptive easement over the areas enclosed by his improvements.

■ A prescriptive easement requires use of land that is open and notorious, hostile to the true owner and continuous for five years. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].) Unlike adverse possession, a prescriptive easement does not require the payment of taxes. (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321–322 [178 Cal.Rptr. 624, 636 P.2d 588].) It is not an ownership right, but a right to a specific use of another's property. (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296 [54 Cal.Rptr.2d 284].) But Kapner's use of the land was not in the nature of an easement. Instead, he enclosed and possessed the land in question.

To escape the tax requirement for adverse possession, some claimants who have exercised what amounts to possessory rights over parts of neighboring parcels, have claimed a prescriptive easement. Courts uniformly have rejected the claim. (See *Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261 [228 Cal.Rptr. 779]; *Silacci v. Abramson* (1996) 45 Cal.App.4th 558 [53 Cal.Rptr.2d 37]; *Mehdizadeh v. Mincer, supra,* 46 Cal.App.4th at pp. 1304–1308.) These cases rest on the traditional distinction between easements and possessory interests. (See, e.g., *Mehdizadeh,* at pp. 1305–1306.)

■ Kapner relies on *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749 [110 Cal.Rptr.2d 861]. There the court declared an equitable easement over a fenced-in area by balancing the hardships. The case does not involve the claim of a prescriptive easement. In any event, to the extent *Hirshfield* can be read as allowing the creation of a prescriptive easement over an area the claimant possessed, we decline to follow it. We are required to observe the traditional distinction between easements and possessory interests in order to foster certainty in land titles. Moreover, the requirement for paying taxes in order to obtain title by adverse possession is statutory. (Code Civ. Proc., § 325.) The law does not allow parties who have possessed land to ignore the statutory requirement for paying taxes by claiming a prescriptive easement.

Because Kapner enclosed and possessed the land in question, his claim to a prescriptive easement is without merit.

## II

Kapner contends the fifth amendment to the PC&R's is not binding on his parcel.

Kapner's contention is based on the theory that the amendment does not particularly describe the affected land. He cites Civil Code section 1468, subdivision (a), which requires, "The land of the covenantor which is to be affected by such covenants, and the land of covenantee to be benefited, are particularly described in the instrument containing such covenants[.]"

■ It is true that the amendment did not contain its own legal description. But a document need not contain its own legal description to particularly describe land. It is well settled that reference to a previous instrument that describes the land is a sufficient description. (See *Calvi v. Bittner* (1961) 198 Cal.App.2d 312, 316 [17 Cal.Rptr. 850]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 153, p. 363.) Here the amendment states that it supercedes all previous provisions of the PC&R's which were "rerecorded

on August 15, 1960, at Book 1770, page 438, in the Official Records, Office of the County Recorder, Santa Barbara County, California[.]"

Kapner concedes that the PC&R's rerecorded on August 15, 1960, contain a metes and bounds description of the entire ranch. He argues, however, that his parcel is not particularly described. But his parcel need not be particularly described. By describing the entire ranch, the rerecorded PC&R's particularly describe all of the land benefited and burdened by the fifth amendment. That is all that is necessary. Anyone searching the title to Kapner's parcel would realize that his parcel is part of the land that is particularly described as being encumbered by the amended PC&R's.

Kapner points out that Meyers conveyed the roadway parcel to Security Title prior to the covenants being rerecorded in 1960. But Security Title had reconveyed the parcel to Meyers prior to the rerecording of the PC&R's. The rerecorded PC&R's describe the entire ranch, which encompassed the roadway parcel. We fail to see Kapner's point. The prior conveyance and reconveyance of the roadway parcel does not affect the validity of the PC&R's or any of the amendments.

### III

Kapner contends the trial court cannot grant implied powers to the MRA.

Kapner's contention is based on the theory that the trial court erred when it found the MRA has the power and authority to protect the ownership rights of its members in the roadway. But the PC&R's expressly place the duty on the MRA to maintain the roadway. The imposition of the duty necessarily carries with it the power to carry it out.

■ One cannot maintain a roadway by allowing obstructions on it. Thus the MRA had the power to act to remove obstructions placed on the roadway parcel by Kapner.

### IV

Kapner contends the MRA's claims are barred by the three-year statute of limitations for trespass (Code Civ. Proc., § 338, subd. (b)), the five-year statute for the enforcement of covenants restricting the use of real property (*id.,* § 336, subd. (b)) and the four-year statute for actions on a written instrument (*id.,* § 337, subd. 1).

■ Although the MRA's cross-complaint does not characterize its cause of action, on appeal the MRA characterizes the cause of action as trespass.

But the applicable statute of limitations is not determined by plaintiff's characterization of its cause of action. Instead, it is determined by the facts alleged in the complaint and proven at trial. (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 23, p. 84 [plaintiff must plead facts that will establish the proper statute of limitations].) Here the MRA's cross-complaint alleges, and Kapner does not dispute, that Kapner and the other members of the MRA are tenants in common in the roadway parcel.

■ " 'A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it. . . .' [Citation.]" (*Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233 [185 Cal.Rptr. 280, 649 P.2d 922], quoting Rest.2d Torts, § 821D, com. d.) Kapner has not invaded the other parcel owners' right to exclusive possession of the roadway parcel. They have no right to exclusive possession as against Kapner. All tenants in common have the right to share equally in the possession of the entire property. (See 4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 264, pp. 465–466.) A tenant in common cannot trespass on the commonly owned property. Thus the statute of limitation for trespass does not apply here.

■ Where one cotenant unlawfully excludes other cotenants from a part or all of the cotenancy, the cause of action is properly characterized as an action for possession. (See *Noble v. Manatt* (1919) 42 Cal.App. 496 [183 P. 823].) A cotenant who claims exclusive possession may bar a cause of action brought by other cotentants by proving he has adversely possessed the property. (See 4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 93 et seq.) But here the trial court found Kapner did not prove adverse possession. Kapner does not challenge that finding on appeal.

Nor is the MRA's claim barred by the five-year statute of limitations for the enforcement of covenants restricting the use of real property or the four-year statute for actions on a written instrument. The MRA is not seeking to enforce a contract or restrictive covenant. Instead, the MRA is seeking to enforce the rights inherent in common property ownership. Even without a covenant, Kapner has no right to exclude the other cotenants from any portion of the roadway parcel.

V

Kapner contends waiver and laches bar any recovery under the MRA's cross-complaint.

■ Waiver of the right to enforce a covenant may occur where substantially all of the landowners have acquiesced in a violation so as to indicate an abandonment. (*Bryant v. Whitney* (1918) 178 Cal. 640, 643 [174 P. 32].)

Kapner claims that 35 of 54 landowners in Meadowlark Ranch have encroachments in the roadway parcel. But shortly after a survey disclosed the extent of the encroachments, the MRA sent letters requiring the offending landowners to either remove the encroachments or sign an encroachment agreement. That does not indicate waiver or abandonment. Kapner cites one case in which the MRA consented to an encroachment. But one or a few waivers will not suffice. There must be a sufficient number of waivers so that the purpose of the general plan is undermined. (See *Seligman v. Tucker* (1970) 6 Cal.App.3d 691, 699, fn. 6 [86 Cal.Rptr. 187].) The trial court was not required to find a waiver. Moreover, as we have stated, the MRA's action is not based on a specific covenant or restriction but on the property rights of its members as tenants in common.

■ Laches may bar equitable relief where the party seeking relief has delayed enforcing a right and there is prejudice arising from the delay. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 14–15, pp. 690–692.) In determining whether laches apply, the court should weigh the competing equities and grant or deny relief depending on the balance of those equities. (*Id.*, § 14, p. 691.)

The trial court was not required to find delay. A former MRA board member testified that prior to the 2001 survey, nobody really knew where the boundary lines were. Nor was the trial court required to find prejudice. Even had the MRA acted the day after Kapner's improvements were completed, he would still have had to move them. Kapner asserts he spent money to maintain the improvements. But he does not point to any such evidence in the record, nor does he specify how much he spent. Finally, the trial court could take into account in balancing the equities that when Kapner was a member of the MRA's board he was instrumental in forcing other members to remove their encroachments.

## VI

Kapner contends the MRA's action is barred by the PC&R's.

Article 3.4 of the PC&R's provides: "Notwithstanding anything to the contrary contained herein, after the expiration of two (2) years from the date of issuance of a building permit by municipal or other governmental authority for any improvement, said improvement shall, for the benefit of purchasers and encumbrancers in good faith and for value, be deemed to be in compliance with all provisions of this Article III, unless actual notice of such noncompliance or noncompletion, executed by the Architectural Committee or its designated representatives, shall appear of record in the Office of the County Recorder of Santa Barbara County, California, or unless legal proceedings shall have been instituted to enforce compliance or completion."

The provision only applies to improvements for which a building permit has been issued. The architect who designed Kapner's home testified no building permit was required for his perimeter fence. Moreover, the provision only benefits purchasers and encumbrancers for value. Its obvious purpose is to protect those who purchase or encumber improved property. As the original improver, Kapner is not protected.

The judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.