267 P.2d 1069

CONDOS et ux.
v.
HOME DEVELOPMENT CO., Inc. et al.
No. 5764.

Supreme Court of Arizona.

March 15, 1954.

Robert F. Miller, Scruggs & Rucker, Tucson, for appellants, and Richard N. Roylston, Tucson, associate counsel.

Darrow & D'Antonio, Tucson, for appellees.

PHELPS, Chief Justice.

This is an appeal by defendants Tom Condos and Sophia Condos, his wife, from a judgment of the superior court of Pima County in favor of plaintiff-appellees Home Development Company, a corporation, enjoining defendants from selling intoxicating liquors upon Lot 8, Block 67 of National City subdivision No. 5 to the city of Tucson in violation of a restrictive covenant against the sale of such liquors thereon, and from an order denying defendant's motion for a new trial. The parties will be referred to as the Company and defendants. The action was originally brought by the Company but by permission of court, a number of purchasers of lots in said subdivision were joined as parties plaintiff.

The facts are that as a part of a larger development the Company on January 4, 1945, officially platted National City Subdivision No. 5 as a subdivision to the city of Tucson. This land extended along South Sixth Avenue. On May 25 following, the Company recorded with the county recorder of Pima County the following restrictions which were declared in the instrument to be covenants running with the land constituting equitable servitudes upon the lots lying within said subdivision:

"1. The restrictive covenants of National City No. 5 subdivision of Pima County, Arizona, shall run with the land.

"2. All of said property shall be used for residential purposes only except Blocks 67 and 77, Lot 11 in Block 68, Lot 1 in Block 69, Lot 26 in Block 71, Lot 11 in Block 72, Lot 10 in Block 75 and Lot 1 in Block 76.

"3. No residence shall be constructed in the front half of property that is not of a permanent character.

"4. All adobe and tile buildings must be plastered on the exterior surface.

"5. All frame buildings must be painted.

"6. No residence constructed of scrap metal shall be allowed.

"7. Garages may be built of corrugated iron.

"8. No outside toilets will be permitted, except for a period not to exceed 90 days during construction of a permanent house.

"9. All buildings built upon lots used for business purposes must be set back at least ten feet from the property line.

"10. No buildings constructed on the lots to be used for residential purposes shall be built nearer than 25 feet to the front property line, nor nearer than five feet to any side property line, within 50 feet distant from the front property line of said lots, nor nearer than five feet to the side street of said property line, if same is a corner lot.

"11. No residence costing less than $1,000 shall be permitted on the front half of the lot.

"12. All lots and residences may have a garage, chicken runs, and the customary outbuildings on the premises.

"13. All temporary houses must be set back at least half-way from the front · property line of the lots upon which they are situated.

"14. No part of said property shall be sold, conveyed, ·rented, or leased to any person of negro descent.

"15. No part of said property, or any buildings thereon, except Lot 14 in Block 67, shall be used or permitted to be used, in whole or in part, direct-ly or indirectly, or in any guise whatever, for the sale or manufacture of intoxicating liquor of any kind."

These covenants were incorporated by reference in all deeds of conveyance affecting lots within the subdivision. The owners of Lot 14, Block 67, were at the times mentioned in these proceedings engaged in selling intoxicating liquors thereon pursuant to the permit granted in the declaration of conditions and restrictions recorded with the county recorder as above stated and in accordance with a license issued by the state liquor department.

Defendants purchased Lot 8, Block 67 from the company and received a deed of conveyance thereto containing the restrictive convenants hereinabove enumerated. Notwithstanding these covenants, however, defendants on the 6th day of February, 1951, made application for a license to sell intoxicating liquor upon said lot. They procured a license authorizing the sale of such liquor thereon from the state liquor department and thereupon proceeded to sell intoxicating liquors upon said lot in violation of said restrictive covenant prohibiting the same. The Company brought this action, seeking among other things injunctive relief against defendant. The cause was tried to the court without a jury. Findings of fact and conclusions of law were made by the trial court and judgment thereon entered as above stated.

Defendants have assigned a number of errors based upon the court's findings of

fact and conclusions of law, many of which we believe to be without any merit whatever. The only question presented, as we view it, which deserves our consideration is whether the restrictions imposed upon the use of lots in this subdivision have been so thoroughly disregarded as to result in such a change in the area as to destroy the effectiveness of the restrictions, defeat the purposes for which they were imposed and consequently to amount to an abandonment thereof.

There is some testimony of two or three churches in the area which for the most part were residences in which religious services were conducted. Chicken farms complained of by defendants under the evidence shrank to a mere half dozen roosters for sale at one home with perhaps a few hens for domestic use. Second hand stores were narrowed to one residence where some few chairs, stoves, etc., were offered for sale, and nine outside toilets were shown to exist in the entire area.

■ The rental space on vacant lots for cars for a few days during a rodeo held across the highway from said lots can't be said to constitute a business. It will be observed from a perusal of the restrictive covenants imposed upon the lots in question that none of them expressly prohibited residences from being used for religious services; chicken runs are specially allowed thereunder and there are no restrictions against a duplex being built on a lot. Indeed there is no requirement that only one residence shall be built upon a single lot. It must be remembered that the minimum cost required of a residence was only $1,000. This means that the prospective residents were anticipated to be people of limited means. The evidence shows that many of these people had to defer completion of their homes for a year or two because of lack of funds with which to buy material. They did the work themselves at spare times and while the failure to paint a frame house or to plaster an adobe building, or the existence of six to nine outside toilets in an area containing 261 lots was a violation of the restrictive covenants imposed, it cannot be said to be of such a nature as to change the character of the area to such an extent that the purpose of the restrictions have been defeated nor do the combined violations actually proved at the trial have such effect.

The Company asserts that it is the law that covenants of the character here involved are separate and each independent of the other and that the right to enforce one covenant is not affected by the violations of others and that the indulgence in such breach will not constitute a waiver or abandonment of all restrictions in the absence of a clear intent to abandon. Defendants concede this to be the law but claim that the principle stated is not applicable to the instant case for the reason that there had been a complete abandonment of the

restrictions in this particular subdivision which has destroyed the restrictive covenants as such and left the subdivision without any restrictions that could be enforced. We have above expressed our views to the contrary.

The witness Proctor, testifying for defendants, pointed out a number of violations concerning side-line restrictions—outside toilets, unpainted wooden houses, unplastered adobe or cement block houses and in certain cases a number of units being constructed on one lot. It is not clear whether any buildings on the premises were used exclusively for religious purposes but there were two residences in which religious services were held. Assuming, however, that all the violations claimed by defendants occurred, they are not of such a character and extent to indicate an abandonment of the entire restrictive plan. Under such circumstances owners of lots may therefore enjoin violations of other restrictive covenants. In Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N.E. 760, 764, involving restrictions placed upon a certain subdivision in the city of Chicago relating to the required space between front of buildings and the front property line; prohibiting buildings that cost less than $5,000 to be constructed thereon; limiting buildings to one residence per lot; prohibiting apartment or flat buildings used or adapted for separate housekeeping for more than one family; prohibiting the use of livery stables or any kind of business upon said lots, the court said that:

"* * * Each of these restrictions is separate and independent of the other, and it can scarcely be said that, because some of the lot owners on Castlewood terrace have violated the building line restrictions, if they have, the balance of the lot owners stood by and permitted it to be done, all restrictions have been abandoned. * *"

The court further said:

"* * * Though it be conceded that the building line restriction has in this particular been violated by some of the lot owners on Castlewood terrace, there is no evidence of the breach of any other of these several restrictions. Abandonment or acquiescence in the violation of one restriction does not amount to the abandonment of other separate and distinct restrictions material and beneficial to the owners of lots affected by them. (Citing cases.)"

And in the case of Benner v. Tacony Athletic Ass'n, 328 Pa. 577, 196 A. 390, 391, involving restrictive convenants contained in deeds of conveyance from the owners to the purchasers of lots in the subdivision in question, reading as follows:

"* * * 'Subject to the express restriction and condition that no tavern or building for the sale or manufacture of beer or liquor of any kind or description and no courthouses, carpenter, blacksmith, currier or machine

shop, livery stable, slaughterhouse, soap or glue boiling establishment or factory of any kind whatever where steam power shall be used for any building or offensive occupation, shall at any time be erected, used or occupied on the tracts of land or any part thereof.' "

where it was sought to enjoin said clubs from selling intoxicating liquors upon said premises and the defense was interposed that the character of the area had been so drastically changed that it would be inequitable to enforce this particular restriction against such clubs, the court said:

"The appellant clubs contend that changed conditions have so affected the neighborhood that the enforcement of the restriction would be inequitable, but, while it is true that some of the tract has become commercial or industrial in character, the largest part remains almost exclusively residential. Even along Torresdale avenue and Longshore street, where many of the properties have been turned over to business purposes, residences still closely surround them. Moreover, the fact that commercial establishments have crept in here and there does not impair the utility of the restriction against the sale of beer or liquor; that restriction, to the residents of the neighborhood, has a desirability and an object unaffected by the encroachments of business. Notwithstanding a change of neighborhood conditions, equity will restrain violations of a restrictive covenant so long as it remains of substantial value to the owner of the dominant estate. (Citing cases.)

"Nor do the clubs stand on firmer ground when they point to breaches of other provisions of the restriction which have been tolerated from time to time, such as the maintenance of a carpenter shop, a steam laundry, a livery stable, and a slaughterhouse. It is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned that objection to further violations is barred. Nor will indulgence work a waiver or estoppel against the enforcement of restrictions which are distinct and separate from those previously violated. (Citing cases.)"

In line with the statement of the court in the Benner case, supra, it is our view that the fact that concrete block and adobe houses have not been plastered or frame houses have not been painted in some cases, together with other violations above enumerated, does not impair the utility of the restriction against the sale of intoxicating liquors on Lot 8, Block 67 of Subdivision No. 5. That restriction to the residents of the neighborhood has a desirability and an object unaffected by the above violations of other restrictive covenants. The court held in that case notwithstanding a change of neighborhood condi-

tions equity would restrain the breach of the restrictive covenant of substantial value to the owners. No claim is made that the covenant relating to intoxicating liquor has been violated.

■ Defendants have raised other points which we will briefly consider, although we do not believe they are meritorious as we stated at the outset. It seems to be the view of defendants that because the Company did not protest the issuance of a liquor license to defendant before the board of supervisors and before the state superintendent of liquor control, it had lost whatever right it had to object thereto, arguing that that remedy is exclusive. This position is wholly untenable. A restrictive covenant which runs with the land is a property right in the nature of an easement and is controlling when it comes into conflict with a license granted by an administrative officer of the state. Cuneo v. Chicago Title & Trust Co., supra. This is so fundamentally sound that authorities are unnecessary to sustain it.

■ Defendants further interpose as a defense that nobody has charged the sale of liquor upon the premises constitutes a nuisance. No such complaint is necessary. The provisions of the restrictive covenant impose an ironclad duty upon defendants not to violate its provisions.

■ It is further claimed that the restrictions as to Lot 8, Block 67, creates a monopoly. In the first place, it does not create a monopoly and the evidence so shows. The undisputed evidence is that in addition to liquors being sold on Lot 14, Block 67, in this subdivision that liquor is being sold in the block immediately to the north and in the block immediately to the south in other subdivisions. The question of the charge of monopoly was answered by the supreme court of the state of New Mexico in the case of Alamogordo Imp. Co. v. Prendergast, 45 N.M. 40, 109 P.2d 254.

■ Defendants further claim that it would work a hardship upon them to deprive them of their business after having made large investments. The answer to this is that they procured the license and entered into the business with knowledge of the existence of the restrictive covenant and therefore cannot complain of any losses or hardships which may result from their breach of said covenant.

■ It is further claimed that the Company has not the right to enforce this covenant. The answer is that it is a party to the covenant. It has an interest in some of the lots yet remaining in its name and it is the unquestioned law as held by all of the authorities including our own court in Whitaker v. Holmes, 74 Ariz. 30, 243 P. 2d 462; Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132, that such covenants are enforcible either by the original grantor or by a grantee of lots located within the subdivision. We find no error in the record.

The judgment of the trial court is affirmed.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.