596 P.2d 1176

**TUCSON–NORTH TOWN HOME APARTMENTS HOMEOWNERS' ASSOCIATION, Plaintiff-Appellee,**

v.

**Jimmi ROBB (Unit #18), Stan Hansen and Rayleen Hansen, his wife (Unit #15), Defendants-Appellants.**

No. 2 CA–CIV 3132.

Court of Appeals of Arizona, Division 2.

April 19, 1979.

Rehearing Denied May 23, 1979.

Review Denied June 26, 1979.

Steven N. Bogard, Tucson, for plaintiff-appellee.

Russo, Cox, Dickerson, Cartin & Sylvester, P. C. by J. Patrick Butler, Tucson, for defendants-appellants.

## OPINION

HOWARD, Judge.

Appellee (the Association) sued appellants to enforce the covenants and restrictions pertaining to a condominium apartment project. The dispute involved appellants' installation of evaporative coolers in the windows of their apartments. The trial court, after making findings of fact and conclusions of law, ordered appellants to remove the coolers.

This case has been submitted to us on an agreed statement of facts in lieu of a transcript, pursuant to Rule 11(d), Arizona Rules of Civil Appellate Procedure.

Appellants present the following questions for review. (1) Does the Association have standing to sue? (2) Are the deed restrictions and covenants so vague as to be unenforceable? (3) Was there evidence that the restrictive covenants were violated?

Appellants Jimmi Robb and Stan and Rayleen Hansen were at the time this action was filed and at the time of trial owners and occupants of units # 18 and # 15, respectively, in the Tucson-North Town Home Apartments. Appellee is a collective body authorized by the Declaration of Horizontal Property Regime and is an Arizona corporation. Each unit of the apartments is serviced by an individual heating and air conditioning unit located on its own roof. To reduce their utility bills, appellants installed an evaporative cooler in a second story window of each of the two units. They did so without the approval of the board of directors of the Association, after having requested permission and having their requests denied. The Association then filed this action without first receiving the approval of a majority of the owners, which appellants claim is a condition precedent to suing them.

The Declaration of Horizontal Property Regime, Covenants and Restrictions of Tucson-North Town Home Apartments, a Condominium Apartment Project is recorded in the Pima County Recorder's Office.[1] Article III of the Covenants and Restrictions creates the Association. It states:

"Each apartment owner will be a member of the Apartment Owners Association, a non-profit corporation herein referred to as 'Association' which shall have the responsibility of administering the operation of the apartment project, approving the annual budget, operating the common water and sewer system, maintenance, delegating such duties as it elects to agents designated for such purpose, establishing and collecting monthly assessments and arranging for management pursuant to an agreement containing provisions relating to the duties, obligations, removal and compensation of a Management Agent. *Except as otherwise provided, decisions and resolutions of the Association shall require approval of a majority of owners.* The Association shall have all the powers and duties necessary for the administration of the affairs of the apartment project as are more specifically set forth in its Articles of Incorporation which are recorded in

1. See A.R.S. Sec. 33-551-561 for statutory law governing horizontal property regimes.

the office of the County Recorder, Pima County Arizona." (Emphasis added)

Appellants contend that the foregoing article supports their contention. We do not agree. Article V of the Covenants and Restrictions, paragraph C, states:

"All of the provisions of this Declaration shall be deemed covenants, conditions, restrictions and equitable servitudes which may be enforced by any apartment owner or the Apartment Owners Association and which shall be liberally construed to effectuate the purpose of creating a uniform plan for the development and operation of a multiple residential condominium project."

■ We believe that Article V(C) creates the exception mentioned in Article III. It gives the Association power to enforce the restrictions and covenants, and therefore bring a lawsuit, without the consent of the majority of the members.

As for appellants' claim of vagueness, the restriction in question states:

". . . *No change* shall be made by any owner *in any common element* without the written permission of the Apartment Owners Association, provided, however, the owners of the respective apartments shall have the right and privilege of decorating the undecorated and/or unfurnished interior surfaces of the perimeter walls, floors and ceiling surrounding their respective apartments." (Emphasis added)

By virtue of A.R.S. Sec. 33–551(6)(b) and the Declaration of Covenants and Restrictions, the exterior walls and windows of each apartment are common elements.

Appellants contend the restriction cannot be enforced because the word "change" is vague and unclear. As examples of the vagueness of the word, they point to the fact that when a window is opened it is "changed" and that when the grass in the common elements is walked on it is "changed". Certainly, they argue, it could not be intended that permission first be secured before opening a window or walking on the grass. Therefore, the covenant is too vague to give one notice of what is prohibited. We are unable to agree.

■ When the language of a restrictive covenant is unclear, it should be construed in favor of the free use of land, but when the restriction is clear and not contrary to law, courts will enforce it. *Carter v. Conroy*, 25 Ariz.App. 434, 544 P.2d 258 (1976). Words in a restrictive covenant must be given their ordinary meaning. *Riley v. Stoves*, 22 Ariz.App. 223, 526 P.2d 747 (1974). The verb "change" means to alter or make different. Webster's Third New International Dictionary 373 (16th ed., 1971). While walking on the grass or opening a window is a "change" in a philosophical sense, we do not believe the meaning of the word is unclear in its context and in view of the stated purposes of the declarations. We conclude that the installation of the coolers altered a common element and could not be done without the permission of the Association.

Appellants' last argument is that the Declaration of Covenants and Restrictions impliedly permits them to install evaporative coolers in their windows.

Article II(E) of the Declaration states:

"*The* air conditioning unit . . . for each apartment . . . may be located on or within the general common element and notwithstanding this fact each apartment owner shall have the exclusive right to and use of *the* air conditioning unit . . . servicing said owner's property and said owner shall be responsible for the repair, replacement and maintenance of *the* air conditioning unit . . . servicing his apartment." (Emphasis added)

It further states in Article V(C) that "the singular number shall include the plural, as the context may require."

■ We cannot agree with appellants' contention that when the foregoing two provisions are read together they allow them to place evaporative coolers in their windows. Paragraph E speaks in the singular. There is only one air-conditioning unit for each apartment and that unit is already in place on the roof of the apartment, a

common element. While paragraph E allows the owner to replace that unit with another unit on the roof, it does not allow the owner to do otherwise. It speaks in the singular and the context does not require the use of the plural.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concurring.