NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

COLIN PRESTON, et al., *Plaintiffs/Appellants*,

*v.*

LAS SENDAS COMMUNITY ASSOCIATION, INC., *Defendant/Appellee*.

No. 1 CA-CV 22-0761
FILED 10-31-2023

Appeal from the Superior Court in Maricopa County
No. CV2022-010280
The Honorable John R. Hannah, Judge

**AFFIRMED**

COUNSEL

Fowler St. Clair, PLLC, Scottsdale
By Brian Locker
*Counsel for Plaintiffs/Appellants*

Carpenter, Hazlewood, Delgado & Bolen, LLP, Tempe
By Curtis S. Ekmark
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**W I L L I A M S**, Judge:

¶1        Plaintiff Colin Preston and several other property owners ("the Plaintiffs") appeal from the denial of their requests for injunctive relief against the defendant, Las Sendas Community Association, Inc. ("the HOA"). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Las Sendas is a planned community with certain covenants, conditions, and restrictions ("the CC&Rs") enforced by the HOA. The CC&Rs enumerate ten land use classifications, including, among others, single family residential, apartment, condominium, common area, and commercial. Each Plaintiff owns a single-family home in Las Sendas subject to the CC&Rs.

¶3        In 2009, the HOA Board ("the Board") adopted a rule barring leases of fewer than six months duration ("the six-months rule"). *See* CC&Rs, § 5.3 ("The Board may, from time to time, adopt, amend and repeal rules and regulations pertaining to . . . restrictions on the use of Lots and Parcels."). Several years later, in 2014, the legislature enacted A.R.S. § 33-1806.01(A), which governs planned communities like Las Sendas and expressly allows property owners to "use [their] property as [] rental property unless prohibited" in the governing CC&Rs, so long as they abide by the CC&Rs' "rental time period restrictions." 2014 Ariz. Sess. Laws, ch. 83, § 15.

¶4        Concerned that the statute might invalidate the six-months rule, in July 2021, the Board announced a proposed amendment to prohibit Las Sendas homeowners from both leasing their properties for 31 days or less and advertising their properties as "vacation rentals" ("the short-term rental amendment"). The HOA opened voting on the short-term rental amendment in November 2021 and sent the Las Sendas property owners a letter in June 2022 declaring that voters had approved the amendment with more than 75% of owners' support (2,604 of 3,090 votes approved the

proposed amendment – 84.3%) - satisfying the amendment procedure threshold in the CC&Rs. *See* CC&Rs, § 9.3.1 ("[T]he [CC&Rs] may only be amended by the written approval or the affirmative vote, or any combination thereof, of Owners representing not less than seventy-five percent (75%) of the total votes in the Association.").

¶5         The short-term rental amendment, as recorded in June 2022 and in relevant part, added the following language to the CC&Rs:

> No Residential Unit or Residential Lot may be used as a Timeshare, or leased, subleased, licensed, occupied for consideration, or advertised for lease for vacation rental, Timeshare, hotel, or any other transient purposes.
>
> . . . .
>
> No Residential Unit or Residential Lot may be leased, sub-leased, licensed, occupied for consideration, or advertised for lease for a term of less than thirty-one (31) consecutive days.

¶6         Shortly after the HOA recorded the short-term rental amendment, the Plaintiffs filed this case against the HOA, alleging the amendment "lessens, prejudices, and interferes with the value and marketability" of their Las Sendas properties. Among other things, the Plaintiffs sought an injunction "permanently enjoining" the HOA from: (1) interfering with their "ability to solicit rentals of their property," and (2) imposing any penalty for a violation of the short-term rental amendment. The Plaintiffs also requested a preliminary injunction "to protect [their] right to continue to use and market their properties" during the litigation. The Plaintiffs attached signed declarations to their preliminary-injunction request, avowing that they purchased their Las Sendas properties before the passage of the short-term rental amendment and "relied on the CC&Rs in effect" at the time of their purchases "[i]n deciding whether and how" to rent their homes.

¶7         In response, the HOA answered that the validity of the short-term rental amendment defeated the Plaintiffs' claims and moved for summary judgment on that basis. The Plaintiffs, in turn, moved for partial summary judgment on their claim for permanent injunctive relief. After oral argument on the motions, the superior court denied the Plaintiffs' request for a preliminary injunction, denied the Plaintiffs' motion for partial summary judgment on their claim for permanent injunctive relief, and

granted summary judgment in favor of the HOA on the permanent injunction claim.[1]

**¶8** The Plaintiffs timely appealed the superior court's denial of their requests for both preliminary and permanent injunctive relief. We have jurisdiction over the appeal of a superior court order "refusing to grant . . . an injunction" under A.R.S. § 12-2101(A)(5)(b). *See also Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 430, ¶ 19 (App. 2016) (explaining that interlocutory orders, such as the refusal to grant an injunction, need not comply with Arizona Rules of Civil Procedure (Rule) 54(b) or 54(c) "to be appealable").

## DISCUSSION

**¶9** The Plaintiffs challenge the short-term rental amendment's validity, arguing the original CC&Rs did not provide them with sufficient notice that such a restriction could be imposed. On that basis, they contend the superior court improperly denied their requests for injunctive relief.[2]

**¶10** A superior court has broad discretion to grant or withhold injunctive relief, and we will uphold a court's decision absent an abuse of that discretion. *Swain v. Bixby Vill. Golf Course Inc.*, 247 Ariz. 405, 413, ¶ 33 (App. 2019) (reviewing a superior court's ruling on a permanent injunction request for an abuse of discretion); *Fin. Assocs., Inc. v. Hub Props., Inc.*, 143 Ariz. 543, 545 (App. 1984) (reviewing a superior court's ruling on a preliminary injunction request for an abuse of discretion). But we "review questions of law, including the interpretation of CC&Rs and the grant of

---

[1] Plaintiffs alleged other counts against the HOA that are not a part of this appeal.

[2] In its answering brief on appeal, the HOA argues for the first time that the Plaintiffs lacked standing to challenge the short-term rental amendment, asserting that such a claim must be brought under A.R.S. § 10-3631(A)(1) (establishing that any action on behalf "of a corporation that has members" must be brought by "members having twenty-five per cent or more of the voting power or by fifty members, whichever is less") as a derivative action on behalf of the HOA. By failing to raise any standing objection in the superior court, the HOA waived the issue on appeal. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived.").

summary judgment, de novo." *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532, 537, ¶ 9 (2022).

**¶11**  We generally enforce contracts "as written." *Id.* at 536, ¶ 1. But when construing CC&Rs—a "special type" of contract—we will not enforce an amendment, even if properly adopted under A.R.S. § 33-1817(A)(1) (providing that CC&Rs may be amended by a majority vote if such a voting scheme is specified in the CC&Rs) and the CC&Rs' amendment procedure, unless the original CC&Rs "provided sufficient notice" of the possibility of the amendment. *Kalway*, 252 Ariz. at 536, 537-38, ¶¶ 1, 10, 14 (explaining that A.R.S. § 33-1817(A) does not displace the common law prohibition on unforeseen amendments). In other words, we will strike down any "unforeseen" amendment that "would alter the nature of the covenants to which the homeowners originally agreed." *Id.* at 536, 537-38, ¶¶ 1, 8, 15.

**¶12**  To determine whether the Plaintiffs had sufficient notice of the short-term rental amendment, we objectively examine the original CC&Rs and assess whether the amendment falls within the Plaintiffs' "reasonable expectations . . . at the time of purchase." *Id.* at 536, 538-39, ¶¶ 1, 15-16. Under this reasonable-expectations standard, the original CC&Rs "need not provide notice of the precise details of the [short-term rental] amendment," but they must make clear that a restriction exists and that it could "be amended to refine it, correct an error, fill in a gap, or change it in a particular way." *Cao v. PFP Dorsey Invs., LLC*, 253 Ariz. 552, 556, ¶ 20 (App. 2022) (quoting *Kalway*, 252 Ariz. at 539, ¶ 17). In other words, to be valid and enforceable, the short-term rental amendment "cannot be entirely new and different in character, untethered" to existing restrictions but must be a foreseeable modification or extension of the restrictions enumerated in the original CC&Rs. *Kalway*, 252 Ariz. at 539, ¶ 17 (internal quotation omitted). Given this notice requirement, neither a general-purpose statement nor a general-amendment provision can provide sufficient notice of a future amendment. *Id.* at 539, ¶¶ 18, 21.

**¶13**  When interpreting a restriction in CC&Rs, our primary purpose "is to give effect to the original intent of the parties with any doubts resolved against the validity of a restriction." *Id.* at 539, ¶ 16 (internal quotation omitted). To interpret the language used, we give words their plain and ordinary meaning "in the context of the contract as a whole." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009); *see also Riley v. Stoves*, 22 Ariz. App. 223, 226 (1974) ("Restrictions which are not absolutely clear are to be interpreted in the ordinary and popular sense, related to circumstances under which they were used, having in mind their purpose and general situation."). To that end, as a contract, a CC&R must

"be interpreted, if at all possible, in a way that does not render parts of it superfluous." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158 n.9 (1993).

**¶14**　　　Applying these principles, we start with the original CC&Rs. Recorded in 1995,[3] the original CC&Rs state that "[a]ll Residential Units shall be used, improved and devoted exclusively to residential use by a Single Family." CC&Rs, § 3.12. The original CC&Rs contain numerous other use restrictions, including a prohibition on any "business" or "trade" within a residential unit unless:

(i)　　　the existence or operation of the business activity is not apparent or detectable by sight, sound or smell from outside the Residential Unit;

(ii)　　　the business activity conforms to all applicable zoning ordinances or requirements[;]

(iii)　　　the business activity does not involve persons coming on to the [Residential] Lot or the door-to-door solicitation of Owners or other Residents[;] and

(iv)　　　the business activity is consistent with the residential character of the [community] and does not constitute a nuisance or a hazardous or offensive use or threaten [the] security or safety of other Residents . . . *as may be determined from time to time in the sole discretion of the Board*.

CC&Rs, § 3.12 (emphasis added). Although Section 3.12 broadly defines the terms "business" and "trade" to include any "activity undertaken on an ongoing basis which involves the provision of goods or services to persons other than the provider's family and for which the provider receives a fee, compensation or other form of consideration," it carves out one exception: "The leasing of a Residential Unit by the Owner thereof shall not be considered a trade or business" ("the lease exemption"). CC&Rs, § 3.12.

**¶15**　　　Pointing to the absence of any lease duration restriction in the lease exemption, the Plaintiffs contend that the original CC&Rs failed to provide prospective purchasers (including Plaintiffs before they made their purchases) with reasonable notice that a future amendment could impose a durational limit. Applying the plain and ordinary meaning of lease, the

---

[3]　　　The 1998, 2004, and 2005 amendments to the CC&Rs did not alter the provisions relevant to this appeal.

lease exemption, read in isolation, neither imposes a durational limit nor suggests that a future amendment may do so. But as an exception to Section 3.12's general prohibition on commercial activity in residential units, the lease exemption has no meaning in and of itself, only in relation to the rest of the provision and, more broadly, the CC&Rs as a whole.

**¶16** To determine the contours of reasonableness and foreseeability, we must consider whether the original CC&Rs in their entirety, not the lease exception by itself, provided sufficient notice to prospective purchasers that a durational limit on leases could later be imposed by amendment. *Powell v. Washburn*, 211 Ariz. 553, 554, 556-57, ¶¶ 1, 13 (2006) ("[R]estrictive covenants should be interpreted to give effect to the intention of the parties as determined from the language of the document in its entirety and the purpose for which the covenants were created.") (adopting Restatement (Third) of Property: Servitudes § 4.1(1) (2000)). As noted, under the original CC&Rs, Section 3.12 restricts all Las Sendas residential units to "residential use by a [s]ingle [f]amily." CC&Rs, 3.12. The original CC&Rs define a residential unit as "any building . . . designed and intended for independent ownership and for use and occupancy *as a residence*," CC&Rs, § 1.48 (emphasis added), and a single family as "a group of one or more persons each related to the other by blood, marriage or legal adoption, or a group of not more than three (3) persons not all so related, who *maintain a common household in a Residential Unit*," CC&Rs, § 1.49. Defining a residential unit as a building occupied "*as a residence*"—rather than a building used for *residential purposes*—suggests continuing occupancy, not transient occupancy. More clearly, by limiting permissible use to those persons who "*maintain*" a common household in a residential unit, the original CC&Rs' use restriction encompasses a temporal component, such that use of a residential unit by individuals who do not reside together for a substantial period *in the residential unit* is restricted.[4]

---

[4] To the extent the Plaintiffs support their claim that short-term rentals qualify as residential use by relying on A.R.S. § 9-500.39, which generally limits municipal regulation of "vacation rentals or short-term rentals" but precludes use of such rental spaces for "nonresidential" activities—such as retail—we note that the statute, and other related statutes enacted in 2016, after the rise of the "[o]nline lodging marketplace," A.R.S. § 42-5076(E)(1), did not inform the meaning of the term "residential" as used in the original CC&Rs. 2016 Ariz. Sess. Laws, 208, §§ 1-15. Moreover, the various cases the Plaintiffs cite for the general proposition that a "'dwelling' is simply a

¶17        Turning to the original CC&Rs' restrictions on business and trade conducted in a residential unit, any commercial activity that is "detectable by sight, sound or smell from outside" the residential unit or "involve[s] persons coming on to" the residential unit is forbidden. CC&Rs, § 3.12. In fact, the original CC&Rs permit the Board, in its "sole discretion," to bar any commercial activity it deems a nuisance, even if that activity otherwise does not violate the enumerated restrictions. CC&Rs, § 3.12. Although the original CC&Rs specifically exempt leases from the general category of business and trade, the breadth and scope of Section 3.12 reasonably places prospective purchasers on notice that their properties could be regulated by extensive use restrictions, including substantial limitations on commercial activity, subject to Board discretion and future amendment.

¶18        Apart from the use restrictions imposed under Section 3.12, another provision of the original CC&Rs gives notice to prospective purchasers that durational limits could be imposed on leases. The original CC&Rs impose use restrictions not only on residential units, such as those owned by the Plaintiffs, but on apartment units. CC&Rs, § 1.3. Under the original CC&Rs, the Las Sendas "Rental Apartments," internally defined as "buildings consisting of four or more commercial integrated dwelling units," may not be used "as a hotel or [on] some other transient basis."[5] CC&Rs, § 1.44. This use restriction largely tracks the substantive language of the short-term rental amendment. Although no such language appeared in the lease exception when the Plaintiffs purchased their properties, a prospective purchaser would have been on notice and could have reasonably anticipated that the HOA may amend the original CC&Rs to impose an express durational restriction on the leasing of residential units like that imposed on apartment units.

¶19        Viewed in their entirety, the original CC&Rs provided sufficient notice of the possibility of the short-term rental amendment. The existing use restrictions—limiting residential units to single family, residential use—are inconsistent with short-term rentals. And the existing

---

house" have no bearing on the meaning of "residential" as specifically used within the context of the original CC&Rs.

[5]        As defined in A.R.S. § 42-5070(F), governing the taxation of transient lodging, "'transient' means any person who either at the person's own expense or at the expense of another obtains lodging space or the use of lodging space on a daily or weekly basis, or on any other basis for less than thirty consecutive days."

limits on business and trade reasonably placed prospective purchasers on notice that any commercial activity would be extensively regulated and even curtailed in the Board's discretion. Given these substantial use restrictions on residential units and the express durational limit on apartment rentals, we conclude that upholding the short-term rental amendment does not alter the original CC&Rs in any substantial and unforeseen way. In other words, prospective purchasers would have reasonably anticipated the possibility of further restrictions on leases as falling within the scope of the original CC&Rs' regulation. Therefore, because the short-term rental amendment is valid and enforceable, the superior court properly denied the Plaintiffs' requests for injunctive relief.[6]

## CONCLUSION

**¶20** For the foregoing reasons, we affirm. Both parties request an award of attorneys' fees under A.R.S. § 12-341.01, which authorizes the award of attorneys' fees to "the successful party" in any action "arising out of a contract." The HOA also requests an award of attorneys' fees under CC&Rs, § 9.1, which entitles "the prevailing party" in an action to enforce the CC&Rs "to recover from the other party all attorney fees incurred." As the prevailing party, we award the HOA its reasonable attorneys' fees and costs incurred on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[6] The record does not reflect when the Plaintiffs purchased their Las Sendas properties, other than before the HOA announced the prospective short-term rental amendment. Therefore, on this record, we do not consider the extent to which the Board's adoption of the six-months rule may have provided additional notice of a durational limitation on leases.